(115 App. Div. 241.)

PITTSBURGH AMUSEMENT CO. v. FERGUSON

(Supreme Court, Appellate Division, First Department.  November 5, 1906.)

1. REFORMATION OF INSTRUMENTS—CONTRACT—CONSTRUCTION—NECESSITY.

Where a contract for a lease provided that the agreement was made to insure the execution of the lease, which, "when executed," should be subject to the approval of the attorneys of the parties, the contract should be construed as providing for approval by the attorneys "before execution

thereof," so that no information was required to substitute the words "be-fore execution thereof" for the words "when executed."

2. SPECIFIC PERFORMANCE—CONTRACT FOR LEASE—PERFORMANCE.

E. executed with defendant a contract for the lease of certain property for a theater building, August 7, 1900, for a term of 99 years from April 1, 1901. E. signed the contract with the intention of transferring it to a corporation to be formed, and agreed to procure a surety acceptable to defendant for the compliance with the terms of the lease by the lessee. E., being desirous of obtaining actual possession of the whole property, which was otherwise rented by October 1, 1900, it was agreed that de-fendant and E. should each deposit $4,000 as a bonus with which to pur-chase unexpired terms of existing leases. A lease satisfactory to both parties was prepared, and defendant signed and deposited the same and his $4,000 with his attorney, who repeatedly demanded completion by E., who did nothing until January, 1901, when plaintiff was organized, and after an assignment of the contract demanded performance, notwithstand-ing notice had been given by defendant's attorney that the negotiations were ended. *Held* that, neither plaintiff nor E. having tendered perform-ance prior to the agreed date for performance, plaintiff was not entitled to enforce specific performance of the contract.

Appeal from Special Term, New York County.

Suit by the Pittsburgh Amusement Company against Walter Fer-guson. From a decree dismissing the complaint on the merits, plain-tiff appeals. Affirmed.

Argued before PATTERSON, INGRAHAM, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

James A. Douglas, for appellant.
Frank E. Blackwell, for respondent.

SCOTT, J. The plaintiff brings this action in equity to reform a written agreement between defendant and one L. M. Eirick, to whose rights the plaintiff claims to have succeeded, and to compel specific performance of the agreement as so reformed. Upon a former trial the complaint was dismissed, upon the evidence produced by plaintiff. The judgment entered upon that dismissal was reversed by the court, and a new trial ordered. 100 App. Div. 453, 91 N. Y. Supp. 666. Upon the second trial both parties gave evidence, and judgment was awarded dismissing the complaint upon the merits. The plaintiff again appeals.

The facts as they now appear differ in many essential particulars from those which were made to appear upon the former trial, and necessitate a re-examination of the questions involved. The agreement sought to be reformed and enforced was in writing and dated August 7, 1900. The parties to it are this defendant and L. M. Eirick, "as president for a corporation to be formed hereafter." By the agreement the defend-ant agreed to lease to Eirick certain property in Pittsburgh for a term of 99 years from April 1, 1901, at a stipulated rent, and Eirick agreed to erect upon the property a theater building at any early date. De-fendant also gave to Eirick an option to purchase the property at any time during the first 10 years of the lease at a stipulated price. This agreement was obviously intended merely as an executory contract to make a formal lease in the future, and its final clause read as follows: "This agreement is made to insure the execution of the lease, which when executed shall be subject to the approval of the attorneys to the parties of this agreement." The reformation sought is the substitution

in this clause of the words "before execution thereof," for the words "when executed."

As pointed out in the former opinion, such reformation is quite unnecessary, since the clear intention of the clause and the only reasonable construction thereof is that the lease before execution shall have been approved by the attorneys. It would be absurd to construe the clause as meaning that the lease should first be executed by the parties and then approved by their attorneys. So far then as concerns the reformation of the contract the plaintiff needs no relief. Is it entitled to specific performance? Soon after this agreement was made a lease was prepared and approved by the attorneys for defendant and Eirick and by Eirick himself and certain gentlemen who were interested in the projected theater enterprise, and who with Eirick afterwards organized the plaintiff corporation. It is not disputed that this lease was entirely acceptable to all parties concerned, and is the lease which plaintiff afterwards sought and now seeks to enforce. It is dated September 24, 1900, and purports to be made between the defendant, party of the first part, denominated the lessor, and L. M. Eirick, party of the second part, denominated the lessee. The lessor, upon his part, leases the property for the terms and at the rentals specified in the preliminary agreement and gives the option to purchase therein provided for. The lessee upon his part enters into several covenants: First, he agrees to pay the rent and taxes as they fall due, with the usual remedies to the lessor in case of nonpayment. Second, he agrees to procure a surety to the lease, acceptable to the lessor in the sum of $100,000 to secure the payment when due of all rent, taxes, charges, and assessments payable by the lessee, and to secure the making of the projected improvements upon the leased premises; the liability of the surety to terminate if and when the lessee or his assignee shall have completed such improvements. Third, the lessee agrees, within one year from the date of the lease, to erect upon the premises a brick, stone, and steel structure costing not less than $100,000, which, when completed, and all subsequent additions and substitutes therefor, shall remain on the premises as a security, substitute for the surety above mentioned, for all rents, taxes, charges, and assessments payable by the lessee. The lessee, his heirs or assigns, are to keep the property insured for the protection of the lessor. Fourth, the lessee agrees to protect the lessor against mechanics' liens and any and all claims, damages, and costs growing out of the construction and occupancy. The fifth and sixth clauses of the undertaking on the part of the lessee have an important bearing upon the controversy now before us.

The fifth, so far as significant, reads as follows:

"Upon the completion of the building as hereinbefore provided and the assignment of this lease, and the written acceptance and assumption of all of its terms by such assignee, and his agreement to become liable for the performance of all covenants of the lessee to be thereafter performed, the lessor hereby agrees to release the lessee from all personal liability hereunder, and thereupon the assignee of the lease shall become liable for all the covenants of the lessee as if he were originally the lessee or party of the second part hereto; all liability of the present second party then ceasing, and the remedies of the lessor being thereafter limited to the assignee and the leased premises."

The sixth clause reads as follows:

"It is further mutually agreed that as this lease does not take effect until April 1, 1901, and as the premises are now under lease, and the lessor is willing that the lessee shall procure as early possession of the premises as possible for the purpose of making his improvements thereon, the lessor agrees to assist the lessee in all reasonable ways in obtaining possession of the leased premises prior to April 1, 1901, the lessee hereby agreeing to pay to the lessor all losses of rent suffered by him in so doing from October 1, 1900; one-half not exceeding four thousand dollars ($4,000) as his share of the premium or bonus which the lessee may be required to pay to the present tenants for surrender of their leases and possession."

The leases then upon the property were of two kinds, some were from year to year, and, in order that they should terminate on April 1, 1901, it was required that notice to that effect should be given to the tenant on or before January 1, 1901. An important portion of the property was held under a lease extending beyond April 1, 1901, but which could be terminated on that date, on the payment of $1,500, provided notice to that effect were given on or before January 1, 1901. This condition of affairs was known to Eirick and thoroughly understood by him. He was very anxious, however, to obtain actual possession of the whole property by October 1, 1900, and in order to do this, as was ascertained, it would be necessary to pay the tenants about $8,000 as a bonus for vacating. It was under these circumstances and for this reason that the sixth clause, above quoted, was inserted in the lease. Defendant, prior to September 29, being about to go abroad, executed the lease as it had been agreed upon and left it, with $4,000, in the hands of his attorney in order that the agreement might be fulfilled on his part, whenever Eirick should be prepared to fulfill on his part. Repeated demands were made upon the latter by defendant's agent in Pittsburgh that he should execute the lease and fulfill his part of the agreement. These became very insistent, and in December culminated in a notification that, unless the matter was immediately concluded, the negotiation would be broken off, and the premises leased by defendant for another year. Nothing was, however, done in the matter by Eirick until in January, 1901, when the plaintiff was organized and Eirick, under date of January 29th, assigned to it all his right, title, and interest in and to the preliminary agreement of August, 1900.

In March, 1901, plaintiff demanded of defendant that he then execute to it the lease which had been drawn and agreed to in September, and he refused to do so, declaring that the matter had long since been terminated. Neither Eirick, nor the plaintiff, ever tendered to defendant the security provided for in the lease; nor, so far as the evidence shows, were they or either of them ever prepared to furnish such security. The preliminary agreement between Eirick and defendant was only tentative. It provided for a lease in a form and upon terms to be thereafter agreed upon, and the instrument attached to the complaint, approved by the attorneys for both parties and by Eirick, although never executed by defendant, obviously embraced the agreement between the parties, and it is that lease which plaintiff now seeks to compel the defendant to deliver. It represents what both Eirick

and defendant agreed was the meaning and intention of the earlier agreement which they both signed. Although no definite time was fixed either by the preliminary agreement or by the lease at which the latter was to be executed, we think that it was the clear intention of the parties that it should be executed soon after it was drawn, and at all events before January 1, 1901.

The court below has found, and there is ample evidence to support the finding, that Eirick said that, unless he could have possession of the premises on or before the 1st of October, 1900, he would refuse to perform his agreement or execute any lease; that defendant executed the lease on his behalf on September 24, 1900, and placed it in the hands of his attorney in Pittsburgh for delivery to Eirick; that at no time prior to October 1, 1900, was Eirick ready, able, or willing, nor did he offer, to execute and deliver the lease, or to furnish the surety or to pay the sum of $4,000 as provided in the sixth paragraph of the lease; that on October 9th, at the request of Eirick, the time to execute and deliver the lease was extended for 30 days, at which time he promised to execute it; that he did not so execute it, and made no excuse for his failure to do so and asked no further extension. These findings demonstrate that it was agreed that the lease should be executed not later than November 9, 1900, and, although this agreement was oral, it was valid since the original agreement was silent concerning the date when the lease should be executed. Lawrence v. Miller, 86 N. Y. 139.

Other considerations show that it would be unreasonable to require defendant to have waited until the very eve of the commencement of the term to have the lease executed and delivered. The condition of the lease upon the property was the most important. If the lease was to be made or agreed upon, the defendant must be prepared to deliver it to the lessee on April 1, 1900, free from existing leases. To effect this he must take action, by way of giving notice on or before January 1st, and must pay one tenant a large sum of money. It would certainly be unreasonable to ask or expect the defendant to take these measures to clear the property of leases, while it was still uncertain whether or not Eirick would execute the lease he had agreed to sign. Under the facts as found the defendant might well have refused to go further with the lease on November 9, 1900. He did, however, in fact, though not formally, extend Eirick's time to perform until the very last moment, waiting until late in December before declaring that the lease must be signed or the negotiations deemed abandoned. Still Eirick did nothing, and thereby he lost his right to insist upon the delivery of the lease. Having lost his right under the agreement for a lease, he had nothing to assign, and the plaintiff took nothing under the purported assignment which he afterwards made.

Furthermore, the plaintiff never made a sufficient tender of performance on its part, for it neither tendered the executed lease, nor the surety which was to accompany it. Upon the former appeal it was made to appear that defendant had arbitrarily and without good cause refused to fulfill the contract on his part, and the plaintiff has therefore seemed to have been relieved from the necessity of tendering complete

performance. It now appears that defendant promptly and complete-
ly fulfilled his part of the agreement so for as he could without fulfill-
ment by the other party, and elected to rescind the contract only after
Eirick had unreasonably and without excuse refused to do that which
he had agreed to do.

Judgment affirmed, with costs. All concur.